UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

VILMA GONZALEZ,

    Plaintiff,

v.

ARAMARK UNIFORM & CAREER
APPAREL, LLC f/k/a ARAMARK
UNIFORM SERVICES, INC.

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, VILMA GONZALEZ, by and through her undersigned counsel, sues the Defendant, ARAMARK UNIFORM & CAREER APPAREL, LLC f/k/a ARAMARK UNIFORM SERVICES, INC. and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages and to remedy violations of the rights of MS. GONZALEZ under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, ARAMARK UNIFORM & CAREER APPAREL, LLC f/k/a ARAMARK UNIFORM SERVICES, INC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

1

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

4. At the relevant time, Plaintiff was a female, and, as such, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("FCRA"), because the terms, conditions, and privileges of her employment were altered because of her gender.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on October 24, 2019. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. Plaintiff was hired as an operator/team leader for the Defendant on July 21, 1997. At this time, the Plaintiff was working for the Defendant in Minnesota. From 1999 to 2011, the Plaintiff

worked as supervisor/plant manager for Defendant, also in Minnesota. In 2011, the Defendant transferred Plaintiff to Puerto Rico. From 2011 to 2016, Plaintiff was the production manager at Puerto Rico Market Center for Defendant. In March 2016, the Defendant transferred Plaintiff to Florida. From March 2016 until the Plaintiff was wrongfully terminated in October 2018, she was the production manager.

12. As a production manager in Florida, Plaintiff's primary duties and responsibilities included managing the production of employees and supervisors, filling out and submitting reports, and managing the production budget.

13. Plaintiff was qualified for her position as a production manager in that she had experience as a production manager and had all necessary training and experience to perform her job duties and responsibilities. As a matter of fact, the Plaintiff was the only woman production manager for Defendant in both Florida and Puerto Rico.

14. Plaintiff's starting salary was $78,000 per year.

15. Once the Plaintiff came to work for the Defendant in Florida, she became the target of ongoing harassment and discrimination.

16. When the Plaintiff began working for Defendant in Florida, Ms. Esteranca Rodriguez, who does payroll in Human Resources, told the Plaintiff about a conversation she had with Mr. Rafiq Hassan, senior director of operations in the Southern region. Ms. Rodriguez told the Plaintiff that when she heard the Plaintiff was coming, she said to Mr. Hassan, "I am excited that Vilma is coming over. I heard that she is good." Mr. Hassan responded, "She is not that good." The Plaintiff had seen Mr. Hassan a few times when she was working in Puerto Rico because he would fly there to visit the center but it was not until the Plaintiff moved to Florida that she began to work with him on a regular basis.

17. Mr. Hassan often called the Plaintiff into his office. He would say, "you are useless. You do not do your job. Your team is not performing well and it is because of you." Everyone could hear him screaming at her. Mr. Hassan would always ask for the Plaintiff to go and make him coffee, even though he was perfectly capable of making it himself. He also often sent the Plaintiff out to go and get him lunch. He never asked the male employees to make him coffee or get him lunch.

18. On September 24, 2016, the Plaintiff was given a review where she exceeded all expectations. She received a $3,000.00 raise and a $5,000.00 bonus.

19. In July 2017, Mr. Hassan called the Plaintiff and left her a message. He forgot to disconnect and the Plaintiff heard him refer to her as a "stupid bitch" at the end of the message recording.

20. In August 2017, the Plaintiff was in Mr. Hassan's office along with Andrei, maintenance manager, John, productions supervisor, Scott, productions supervisor, and Jason, assistant productions manager. Mr. Hassan had called the Plaintiff into the office to discuss work. But while she was there, she heard some very inappropriate conversations. Mr. Hassan began discussing female breasts and encounters he had with strippers in the past. He was reminiscing about times he went to strip clubs with Andrei. He said to Andrei, "remember their titties. They were so hard." The Plaintiff got up and said, "I am going back to work." She left the office and John followed behind her. John said, "I am sorry for what you heard in there. You should call Human Resources and also have them call me."

21. On September 25, 2017, the Plaintiff received another review, where she exceeded all performance expectations. The Plaintiff received a $3,000.00 raise and a $7,000.00 bonus.

22. In April 2018, the Plaintiff's brother Elio, came to visit her. The Plaintiff's husband picked up her brother at the airport and they both came to the Plaintiff's work to visit her. Mr. Hassan had

previously met the Plaintiff's husband on numerous occasions. The Plaintiff introduced her brother to Mr. Hassan. Mr. Hassan said to her brother, "I know Eddie. He is a good guy and I feel like you are a good guy also. But, what's up with that one?" Mr. Hassan then pointed at the Plaintiff. The Plaintiff felt very embarrassed and discriminated against. In the past, Mr. Hassan had made comments to Eddie such as "you should divorce that woman." Mr. Hassan did not like to refer to the Plaintiff by name. He would always refer to her as "woman" or "that one."

23. In June 2018, Mr. Giovanni Rivera, general manager, presented the Plaintiff with a Letter of Improvement Plan ("LOE") She was immediately transferred to the second shift, effectively removing the Plaintiff from the position where she could control the production team performance. The LOE claimed the plant was behind, that there were shortages, and that the delivery guys were missing products. None of the statements in the LOE were correct, nor were shortages the Plaintiff's responsibility.

24. In July 2018, Mr. Rivera said that the Plaintiff should not be on the service team call, even though it was part of her job duty as a production manager. When the Plaintiff asked for the reason behind this decision, he said, "you should hear yourself on a call. It sounds like you do not know what you are doing." Before July 2018, the Plaintiff was always on the service team calls between district managers and production managers.

25. Also, in July 2018, the Plaintiff was in the office with Mr. Hassan and Mr. Rivera. Mr. Hassan said to her, "you know Giovanni [Rivera] wants to fire you right?"

26. Mr. Rivera was constantly referring to the Plaintiff as a "senora" in his text messages in a sarcastic way, hinting on their age difference. He never referred to the men in this manner.

27. In August 2018, Mr. Rivera said, "I don't understand why Aramark hires women as production managers." The Plaintiff replied, "what do you mean?" Mr. Rivera replied, "this job is too tough for women."

28. In September 2018, for the first time in her career with Defendant, the Plaintiff was given a poor review by Mr. Rivera. Because the Plaintiff did not understand why she was now suddenly getting a bad review she spoke with George Garcia, Vice President of Human Resources. The Plaintiff told Mr. Garcia, "I do not agree with the LOE I received. You don't have a shortage system in place. I also don't like how Mr. Hassan and Mr. Rivera are treating me." The Plaintiff told him that she felt harassed and discriminated against. Mr. Garcia said, "I will look into this and get back to you." But he never did get back to her.

29. On October 25, 2018, Mr. Rivera fired the Plaintiff for allegedly having low performance.

30. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Sex)**

31. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here.

32. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against on the basis of her sex, female.

33. Rafiq Hassan, Giovanni Rivera, and George Garcia, at all times relevant, were acting within the course and scope of their employment for Defendant.

34. Because Plaintiff is a woman, she was continuously criticized, degraded, discriminated against, used as a scapegoat, and her complaints were not addressed or properly handled.

35. Because Plaintiff is a woman, Mr. Hassan would refer to her as "useless", "a stupid bitch", or "that woman." Mr. Hassan would send the Plaintiff to get him coffee and food, make inappropriate and degrading sexual comments about other women in front of her, belittle her in front of others, and accuse her of not doing her job properly.

36. Because Plaintiff is a woman, Mr. Rivera accused her of not doing her job properly, undermined her by moving her to the second shift, removed her from service team calls, and would refer to her as "senora" in a sarcastic and discriminatory demeanor hinting at their age difference. Further, Mr. Rivera expressed his puzzlement at the fact that the Defendant hires females for production manager positions and said that the job is "too tough for women."

37. Because Plaintiff is a woman, when she complained about the harassment and discrimination to Mr. Garcia, her concerns were not taken seriously and the Defendant took no action to stop the discrimination.

38. Upon information and belief, male employees are not belittled, degraded, used as a scapegoat, and forced to get other men food and coffee.

39. Upon information and belief, male employees are not told that production manager positions are "too tough" for them.

40. Upon information and belief, male employees are not moved to different shifts and removed from service team calls that they were always a part of in the past.

41. Upon information and belief, male employees are referred to by their names and not "senor" or "that man."

42. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, VILMA GONZALEZ, being discriminated against.

43. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Sex)**

44. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here.

45. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

46. The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

47. Plaintiff is a woman, and therefore a member of a protected class.

48. Because Plaintiff is a woman, she was continuously criticized, degraded, discriminated against, used as a scapegoat, and her complaints were not addressed or properly handled.

49. Because Plaintiff is a woman, Mr. Hassan would refer to her as "useless", "a stupid bitch", or "that woman." Mr. Hassan would send the Plaintiff to get him coffee and food, make inappropriate and degrading sexual comments about other women in front of her, belittle her in front of others, and accuse her of not doing her job properly.

50. Because Plaintiff is a woman, Mr. Rivera accused her of not doing her job properly, undermined her by moving her to the second shift, removed her from service team calls, and would refer to her as "senora" in a sarcastic and discriminatory demeanor hinting at their age difference. Further, Mr. Rivera expressed his puzzlement at the fact that the Defendant hires females for production manager positions and said that the job is "too tough for women."

51. Upon information and belief, male employees are not moved to different shifts and removed from service team calls that they were always a part of in the past.

52. Because Plaintiff is a woman, when she complained about the harassment and discrimination to Mr. Garcia, her concerns were not taken seriously and the Defendant took no action to stop the discrimination.

53. Upon information and belief, male employees are not belittled, degraded, used as a scapegoat, and forced to get other men food and coffee.

54. Upon information and belief, male employees are not told that production manager positions are "too tough" for them.

55. Upon information and belief, male employees are referred to by their names and not "senor" or "that man."

56. At all relevant and material times, Defendant failed to comply with the FCRA.

57. The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's sex.

9

58. At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was a woman.

59. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

60. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

61. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her sex in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

62. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was a woman, in violation of the FCRA.

63. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's sex.

64. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her sex.  The discrimination on the basis of sex constitutes unlawful discrimination.

65. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, prejudgment interest on her damages

award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Retaliation)**

66. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30, inclusive, as though same were fully re-written here.

67. Plaintiff had the right to voice her grievances that she was being discriminated against.

68. When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

69. Giovanni Rivera, who terminated the Plaintiff, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of his duties.

70. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

71. Plaintiff has engaged the undersigned attorney to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of Title VII of the Civil Rights Act of 1964; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with Title VII of the Civil Rights Act of 1964; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

72. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 30 inclusive, as though same were fully re-written here.

73. Plaintiff had the right to voice her grievances that she was being discriminated against.

74. When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

75. Giovanni Rivera, who terminated the Plaintiff, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of his duties.

76. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

77. Plaintiff has engaged the undersigned attorney to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 22nd day of January, 2020.

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff